UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – –  x

CRIMSON CAPITAL LLC and MICHAEL STAISIL,  :

                         Plaintiffs,  :

                   v.  :  **<u>NOTICE OF REMOVAL</u>**

THE SPARTAN GROUP HOLDING COMPANY,  :
LLC, SPARTAN INVESTMENT PARTNERS LP,
SPARTAN INVESTMENT ASSOCIATES LP,  :  **08 Civ. 6554 (JFK)**
SPARTAN PARTNERS GP, LLC, SPARTAN
CAPITAL MANAGEMENT, LLC, STEPHEN  :
NORRIS CAPITAL PARTNERS LLC, STEPHEN
NORRIS, M82 GROUP LLC, MARSHALL MANLEY, :
DDD VENTURES LLC, DENNIS DAMMERMAN,
GE ASSET MANAGEMENT INCORPORATED,  :
INFLEXION CAPITAL PARTNERS, LP, ABC LLC,
DEF LLC, UVW LP, and XYZ LP,  :

                        Defendants.  :

– – – – – – – – – – – – – – – – – – – – – – – – – – – –  x

        Pursuant to 28 U.S.C. §§ 1332 and 1441, defendants The Spartan Group Holding Company, LLC, Spartan Investment Partners LP, Spartan Investment Associates LP, Spartan Partners GP, LLC, Spartan Capital Management, LLC, M82 Group LLC, Marshall Manley, DDD Ventures, and Dennis Dammerman ("Defendants") hereby file this Notice of Removal, removing to the United States District Court for the Southern District of New York the case brought by plaintiffs Crimson Capital LLC and Michael Staisil in the Supreme Court of the State of New York, County of New York, Index No. 601873/08.  In support of its notice and grounds for removal, Defendants state as follows:

        1.        On June 25, 2008, defendants Marshall Manley and Dennis Dammerman were personally served with the Summons and Complaint attached as Exhibit A.

2.      This Notice of Removal is filed within 30 days after receipt by Defendants of service of this Complaint and is therefore timely filed under 28 U.S.C. § 1446(b).

3.      According to the Summons and Complaint, plaintiff Michael Staisil is an individual residing at 1925 Seventh Avenue and plaintiff Crimson Capital is a Nevada limited liability company. Upon information and belief, Crimson Capital's principal place of business is in Las Vegas, Nevada.

4.      According to the Complaint, defendant Stephen Norris is an individual residing in the State of Florida.

5.      According to the Complaint, defendant Stephen Norris Capital Partners LLC is a Delaware limited liability company.  Upon information and belief, its principal place of business is located at 1 North Clematis St., Suite 130, West Palm Beach, FL 33401.

6.      According to the Complaint, defendant GE Asset Management Incorporated is a Delaware corporation with its principal place of business located in Stamford, Connecticut.

7.      Defendant The Spartan Group Holding Company is a Delaware limited liability company with its with its principal place of business located at 1 North Clematis St., Suite 130, West Palm Beach, FL 33401.

8.      Defendant Spartan Investment Associates, LP is a Delaware limited partnership with its principal place of business located at 1 North Clematis St., West Palm Beach, FL 33401.

9.      Defendant Spartan Partners GP, LLC is a Delaware limited liability company with its principal place of business located at 1 North Clematis St., West Palm Beach, FL 33401.

10.      Defendant Spartan Capital Management, LLC is a Delaware limited liability company with its principal place of business located at 1 North Clematis St., West Palm Beach, FL 33401.

11.      Defendant Marshall Manley is an individual residing in the State of Florida.

12.      Defendant Dennis Dammerman is an individual residing in the State of Florida.

2

13.      Defendant M82 Group LLC is a Florida limited liability company with its principal place of business located at 2475 Marseilles Dr., Palm Beach Gardens, FL 33410.

14.      Defendant DDD Ventures is a Delaware limited liability company with its principal place of business located at 2954 Hurlingham Drive, Wellinton, FL33414.

15.      Defendant Inflexion Capital Partners, LP, which Plaintiffs refer to as "an entity that defendants Norris, Manley, and Dammerman formed in 2008," *see* Complaint ¶ 17, does not exist as a legally formed entity to Manley's and Dammerman's knowledge.

16.      Plaintiffs' Complaint alleges that the defendants breached an agreement to operate a co-investment fund by excluding Plaintiffs from owning, participating in, and managing said fund, and that Plaintiffs were not reimbursed substantial sums of money that they allegedly spent promoting the activities of the fund.  Plaintiffs' claim that they have suffered damages in excess of $20,000,000.  Thus, this is a civil action in which Plaintiffs' prayer for relief exceeds the $75,000 requirement in 28 U.S.C. § 1332.

17.      For the foregoing reasons, this Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(1) as it is a matter between citizens of different states with the amount in controversy exceeding $75,000.00 exclusive of interests and costs.  Removal is proper under 28 U.S.C. § 1441(a) because this Court has diversity jurisdiction.

18.      Removal of this case on the basis of diversity of citizenship is not precluded by the provisions of 28 U.S.C. § 1441(b) because Defendants are not citizens of New York County, the district in which this action was brought.

19.      A Notice of Filing of Notice of Removal, will be filed in the Supreme Court of the State of New York County of New York, with copies served on counsel of record, pursuant to 28 U.S.C. §§ 1446(a) and (d).

NY02DOCS\1494045.1

20.     By filing this Notice of Removal, Defendants do not waive any defenses, including without limitation, lack of personal jurisdiction, improper venue or forum, all defenses specified in Fed. R. Civ. P. 12, or any other defense.

WHEREFORE, Defendants hereby give notice that the above-referenced action now pending against them in the Supreme Court of New York County, New York, has been removed therefrom to this Court.

Respectfully submitted,

Dated: New York, New York
        July 23, 2008

BRYAN CAVE LLP

By:_____/s/ William J. Hibsher_____
        William J. Hibsher
        John D. Kircher
        1290 Avenue of the Americas
        New York, New York 10104
        (212) 541-2000
        *Attorneys for Defendants The Spartan Group*
        *Holding Company, LLC, Spartan Investment*
        *Partners LP, Spartan Investment Associates LP,*
        *Spartan Partners GP, LLC, Spartan Capital*
        *Management, LLC, M82 Group LLC,*
        *Marshall Manley, DDD Ventures, and Dennis*
        *Dammerman*

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

CRIMSON CAPITAL LLC and MICHAEL
STAISIL,

                Plaintiffs,

       v.

THE SPARTAN GROUP HOLDING COMPANY LLC,
SPARTAN INVESTMENT PARTNERS LP, SPARTAN
INVESTMENT ASSOCIATES LP, SPARTAN
PARTNERS GP, LLC, SPARTAN CAPITAL
MANAGEMENT, LLC, STEPHEN NORRIS CAPITAL
PARTNERS LLC, STEPHEN NORRIS, M82 GROUP
LLC, MARSHALL MANLEY, DDD VENTURES LLC,
DENNIS DAMMERMAN, GE ASSET MANAGEMENT
INCORPORATED, INFLEXION CAPITAL
PARTNERS, LP, ABC LLC, DEF LLC, UVW LP,
and XYZ LP,

                Defendants.

---

Index No. *601873/08*

<u>SUMMONS</u>

---

To:  Mr. Marshall Manley     M82 Group LLC

     Mr. Stephen Norris       Stephen Norris Capital Partners LLC

     Mr. Dennis Dammerman    DDD Ventures LLC

     The Spartan Group Holding Company LLC

     Spartan Investment Partners LP

     Spartan Investment Associates LP

     Spartan Partners GP, LLC

     Spartan Capital Management, LLC

     GE Asset Management Incorporated

     Inflexion Capital Partners, LP


       You are hereby summoned to answer the complaint in this

action and to serve a copy of your answer on the plaintiffs'

attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiffs designate New York County as the place of trial. The basis of venue is the residence of plaintiff Michael Staisil at 1925 Seventh Avenue, New York, New York.

Dated: June 24, 2008

Filed: June 24, 2008

ALTMAN & COMPANY PC

By: Eric Rosenberg

260 Madison Avenue
22nd Floor
New York, New York 10016
(212) 683-7600

Attorneys for the Plaintiffs

2

NEW YORK STATE SUPREME COURT
COUNTY OF NEW YORK

———————————————————

CRIMSON CAPITAL LLC and MICHAEL
STAISIL,

                 Plaintiffs,

      v.

THE SPARTAN GROUP HOLDING COMPANY LLC,
SPARTAN INVESTMENT PARTNERS LP, SPARTAN
INVESTMENT ASSOCIATES LP, SPARTAN
PARTNERS GP, LLC, SPARTAN CAPITAL
MANAGEMENT, LLC, STEPHEN NORRIS CAPITAL
PARTNERS LLC, STEPHEN NORRIS, M82 GROUP
LLC, MARSHALL MANLEY, DDD VENTURES LLC,
DENNIS DAMMERMAN, GE ASSET MANAGEMENT
INCORPORATED, INFLEXION CAPITAL
PARTNERS, LP, ABC LLC, DEF LLC, UVW LP,
and XYZ LP,

                Defendants.

Index No. 601873/08

COMPLAINT

———————————————————

       Plaintiffs Crimson Capital LLC and Michael Staisil, by
their attorneys, Altman & Company PC, for their complaint,
allege as follows:

### INTRODUCTION

      1.  This is an action for breach of contract, breach of
fiduciary duties, shareholder oppression, and (in the
alternative) unjust enrichment and promissory estoppel.  In 2007,
plaintiff Michael Staisil and defendants Stephen Norris, Marshall
Manley, and Dennis Dammerman agreed to create, own equally, and
operate a private equity fund business.  In July 2007 they signed
a limited liability company agreement that reflected their equal
ownership of that venture.  Mr. Staisil contributed a
disproportional amount of the work and money required to create

and promote the business.  On December 6, 2007, GE Asset Management virtually assured the venture's success by agreeing to invest tens of millions of dollars in it.  The very next day, December 7, 2007, Messrs. Norris, Manley, and Dammerman repudiated their agreement with Mr. Staisil, insisting that his interest in their venture be reduced and that he have no management role in it.  They even refused to reimburse him for substantial sums of money he paid to establish and promote the fund business notwithstanding the agreement to do so.

## JURISDICTION AND VENUE

2.  Jurisdiction in this Court is proper under CPLR §§301 and 302 because the defendants transacted business within this State and the plaintiffs' claims arise from that business and because the defendants committed torts in this State and their tortious conduct predictably caused injury to the plaintiffs here.  Venue is proper under CPLR § 503 because plaintiffs reside in the County of New York.

## PARTIES

3.  Plaintiff Michael Staisil is an individual residing in the City and State of New York and is the principal of plaintiff Crimson Capital LLC.  An offensive guard on the 1988 Rose Bowl champion Michigan State football team and alumnus of the Harvard Business School, Mr. Staisil worked in corporate finance, management consulting, and investment banking at major companies and at his own firm prior to the events alleged herein.

4.  Plaintiff Crimson Capital LLC is a Nevada limited

2

liability company. Mr. Staisil formed Crimson Capital in mid-2007 in order to own interests in The Spartan Group Holding Company LLC and/or related entities through it together with defendants Stephen Norris, Marshall Manley, Dennis Dammerman and entities they controlled.

5. Defendant Stephen Norris is on information and belief an individual residing in the State of Florida. Mr. Norris was on information and belief a co-founder of The Carlyle Group, a major private equity fund.

6. Defendant Stephen Norris Capital Partners LLC is on information and belief a Delaware limited liability company formed by its principal, Stephen Norris.

7. Defendant Marshall Manley is and was at all relevant times on information and belief a resident of the State of Florida. Mr. Manley was on information and belief previously a partner in the law firm of Finley Kumble et al. and chief executive officer of the Home Group and City Investing Company.

8. Defendant The M82 Group LLC ("M82") is and was at all relevant times on information and belief a Florida limited liability company that its principal, Marshall Manley, formed.

9. Defendant Dennis Dammerman is on information and belief an individual who resides mostly in the State of New York but who also maintains a residence in the State of Florida. Mr. Dammerman was on information and belief chief executive officer and chairman of Kidder Peabody Group, Inc. beginning in 1994 and was chief executive officer of GE Capital Services from 1998 to

3

December 2006.

10. Defendant DDD Ventures LLC is on information and belief a Delaware limited liability company that its principal, Dennis Dammerman, founded.

11. Defendant The Spartan Group Holding Company, LLC ("Spartan Holding") is on information and belief a Delaware limited liability company with a principal place of business located in New York City. Michael Staisil and Stephen Norris formed that company, then called "Staisil Norris Partners, LLC," in April 2007 in order to own and operate the investment fund business that they agreed to run together. They changed its name to "Spartan Group Holding Company" in June 2007 after defendants Manley and Dammerman joined the venture.

12. Defendant Spartan Investment Partners, LP is on information and belief a Delaware limited partnership that was formed to own a private equity fund that Messrs. Staisil, Norris, Dammerman, and Manley had agreed to own and operate. Those individuals, whether through Spartan Holding or directly, were to own equally that entity and the other entities described in paragraphs 13 to 16 below that were to comprise that investment business.

13. Defendant Spartan Investment Associates, LP is on information and belief a Delaware limited partnership that was formed to act as the general partner of Spartan Investment Partners.

14. Defendant Spartan Partners GP, LLC is on

4

information and belief a Delaware limited liability company that was formed to act as the general partner of Spartan Investment Associates.

15.    Defendant Spartan Capital Management, LLC ("Spartan Management") is on information and belief a Delaware limited liability company that was formed to act as the management company for Spartan Investment Partners.

16.    Defendant GE Asset Management Incorporated ("GE") is on information and belief a Delaware Corporation with its principal place of business located in Stamford, Connecticut.  On information and belief, GE acquired an ownership interest of approximately seven percent (7%) in Spartan Holding, Spartan Investment Partners, and/or a successor entity.

17.    Defendant Inflexion Capital Partners, LP is on information and belief an entity that defendants Norris, Manley, and Dammerman formed in 2008 in order to own the private equity fund that they created with the plaintiffs.  On information and belief that entity is the successor in interest to defendant Spartan Investment Partners, LP and those defendants have transferred assets and agreements to that entity and to other related entities that they have created.

18.    Defendants ABC LLC, DEF LLC, UVW LP, and XYZ LP are on information and belief entities, the true names of which are presently unknown to the plaintiffs, created by defendants Norris, Manley, and/or Dammerman, that have succeeded to the assets, agreements, and business of the Spartan entities that are

5

named as defendants herein.

## FACTS

**Staisil - Norris; Manley and**
**Dammerman Join Private Equity Venture.**

19.    Michael Staisil met Stephen Norris in or about January 2007, when Mr. Norris and others approached Mr. Staisil during their search for financing for a real estate acquisition. Thereafter, Messrs. Staisil and Norris discussed several possible business opportunities in which they might both be involved, including the formation of various types of investment funds.  In the spring of 2007 they discussed inter alia the formation of a private equity fund with XE Capital Management, a substantial New York investment firm with which Mr. Staisil had done business. XE Capital proposed that it provide Messrs. Staisil and Norris, operating through a Delaware limited liability company called Staisil Norris Partners, LLC, with money to explore real estate investments; to forward millions in working capital for the general partner of a private equity platform that Messrs. Norris and Staisil were contemplating; and to invest and raise hundreds of millions more in that private equity fund.

20.    Also in the spring of 2007, Messrs. Staisil and Norris began to discuss with Marshall Manley and Dennis Dammerman the participation of Messrs. Manley and Dammerman in the private equity platform Messrs. Staisil and Norris were discussing.  As the discussions proceeded, the name of the contracting entity on the draft documents that were being exchanged with XE Capital Management was therefore changed from Staisil Norris Partners to

6

the four individuals and then to "The Spartan Group Holding Company LLC" (Spartan Holding). They formally changed the name of Staisil Norris Partners to Spartan Holding in or about late June 2007. The name of Spartan Holding was inspired by the mascot of the Michigan State athletic teams.

**Staisil's Disproportional**
**Contributions to Start-Up**

21. Starting in early 2007 and running through the end of that year, both before and after Messrs. Manley and Dammerman joined the contemplated private equity business, Mr. Staisil expended substantial time and effort to create and promote that business and raise money for it. Mr. Staisil did most of the legwork and expended most of the money spent for those purposes. In or about March 2007 he hired Proskauer Rose to perform legal work for the venture and paid that firm a retainer of $50,000. He paid travel and entertainment expenses and paid for development of a logo, business cards, and a "pitch book." He also paid for space in offices he occupied at 520 Madison Avenue for use by the others when they did business on behalf of the venture in New York City, as they often did.

22. In or about June 2007, Mr. Staisil transferred $50,000 to an account at the direction of Stephen Norris after Mr. Norris, claiming he was tight for cash, asked him to "front" it in order to pay expenses. Mr. Norris, who is surely a multimillionaire, requested those moneys on the eve of a business trip that both of them took to the Middle East to meet potential investors in the Spartan venture. Throughout 2007, Mr. Staisil

7

even paid a disproportionate share of the tabs at restaurants when two or more of the principals dined together as they often did. Messrs. Manley and Norris, both of whom are also certainly multimillionaires, strangely made themselves scarce and did not offer to pay when the checks arrived.

23.  Mr. Staisil also paid for Spartan Holdings' sponsorship of a golf tournament near Washington, D.C. that was organized by the Tiger Woods Foundation. Messrs. Norris, Manley, and Dammerman supported the sponsorship of that event. They and Mr. Staisil each invited scores of potential investors and other business contacts to it. The golf tournament, which took place in early July 2007, and a related event the week of May 26, 2007 in Las Vegas, were well attended by their invitees. Spartan Holdings' name was prominently displayed at the sponsor's tent and elsewhere at the event.[1] The principals prevailed upon Mr. Staisil to advance $410,000 toward Spartan's $530,000 commitment in August 2007 upon the understanding that the fund would reimburse him when it obtained working capital. The Tiger Woods Foundation has billed Mr. Staisil for the remaining $120,000.

24.  Mr. Staisil expended his own moneys on all of those things in order to advance the private equity venture upon the understanding and agreement that each principal would be reimbursed for his own expenses when money was raised. For

---

[1]    Because participation in the Tiger Woods tournament was contemplated before Messrs. Manley and Dammerman joined the private equity venture, a few promotional materials at the event still bore the name "Staisil Norris Partners."

example, if and when they entered into an agreement with XE
Capital Management, some of the $5,000,000 in working capital
that firm was to provide to their fund would be used for that
purpose.  However, in or about June 2007 the principals
ultimately agreed not to proceed with XE Capital because they
would be required to give up too much equity in their venture in
order to do so.

25.  Messrs. Staisil, Norris, Manley, and Dammerman
discussed the formation of several types of private equity funds.
In the spring of 2007 their main focus was a "co-investment" fund
that would act as a joint venture partner or co-investor in
private equity investment opportunities alongside lead investors.
However, they also discussed the operation of "direct investment"
funds that would act as lead investors in private equity
transactions.  As the project progressed, they agreed that the
Spartan venture would form funds for the purpose of making direct
investments and/or co-investments depending in large part on the
preferences of potential investors.

**Written LLC Agreement**

26.  Messrs. Staisil, Norris, Manley and Dammerman
agreed to own and operate the contemplated private equity fund
together, with each owning an equal portion of the fund and any
other entities formed to operate that business.  Accordingly, in
July 2007, those individuals, through entities that they
controlled -- Crimson Capital, Stephen Norris Capital, The M82
Group, and DDD Ventures, respectively -- entered into a written

limited liability company agreement (the "LLC Agreement"). The LLC Agreement recites at §§ 1.1 and 2.2 that its purpose is to "sponsor the Fund," which is defined as "Spartan Co-Investment Partners, LP . . formed for the purpose of investing side-by-side with qualified private equity and strategic investors in connection with private investments in a broad spectrum of industries (the 'Initial Fund') and any successor pooled investment vehicle having investment objectives substantially the same as the Initial Fund."

27.   The LLC Agreement named Crimson Capital, Stephen Norris Capital, The M82 Group, and DDD Ventures as Spartan Holdings' members. Messrs. Staisil, Norris, Manley, and Dammerman (who were defined as the "Key Persons" of the members) executed that agreement on behalf of the members. (LLC Agreement § 1.1 definition of "Key Person") The "Key Persons" of those members were also named Spartan Holding's initial directors (§ 4.2(a) and Exhibit B) and officers (§ 6.1 and Exhibit C).

28.   The LLC Agreement provides for the reduction in some Members' interests and Key Persons' rights upon the occurrence of certain events. Pursuant to the definition of "Percentage Interest" in § 1.1, the ownership interest of a member can be reduced by fifty percent upon the occurrence of a "For Cause Event." If such an event occurs, the affected member loses its right to appoint a director pursuant to § 4.2(a). The term "For Cause Event" is defined in the § 1.1 definitions as the willful and intentional failure or refusal to "be actively

involved in accomplishing [Spartan Holding's] purpose" if not cured within a certain amount of time after notice from that company, gross negligence, default in answering a capital call (§ 3.3), a Key Person's conviction of certain crimes, death, or disability.

29. Competition with Spartan Holding also constitutes a "For Cause Event." Pursuant to the last subsection of the definition of that term - (i) - a "For Cause Event" occurs where a "Member, such Member's Key Person or their respective Affiliates are actively involved in, or have a direct or indirect financial interest . . . as a general partner, sponsor, employee or the equivalent, in any pooled investment vehicle that has investment objectives substantially similar to those of the Fund."

30. Pursuant to § 1.1 and Schedule A of the LLC Agreement, each of the four members was to make equal capital contributions of $50,000 to Spartan Holding and to own a twenty-five percent (25%) interest in it. Nothing in the agreement suggested that some of the partners were responsible for raising or contributing more working capital than others. The amounts were relatively modest because the principals expected that investors would ultimately provide working capital and the fund business would earn it. Because Mr. Staisil had incurred a disproportional share of the venture's costs, he requested that his $50,000 contribution be deducted from the moneys that he had advanced to the venture. Mr. Manley initially agreed but on

11

information and belief Mr. Norris asked for the same arrangement for himself.  Ultimately the principals agreed -- Mr. Staisil with some reluctance -- that each would continue to bear his own costs until the venture raised money to repay them.

31.  The equal roles of the four principals in Spartan Holding and in any entities relating to the contemplated fund were also reflected in a "Confidential Private Placement Memorandum," or "PPM," that was distributed to potential investors in the latter part of 2007.  Reflecting those parties' agreement, that PPM, the content of which was known to Messrs. Norris, Staisil, Manley, and Dammerman, provided in the first page of its executive summary that they would "serve as the principals of [Spartan Investment Partners] (the 'Principals')." On that same page it added that "[t]he General Partner [Spartan Investment Associates, LP], its general partner [Spartan Partners GP, LLC] and the Management Company [Spartan Capital Management, LLC] are all owned and controlled primarily by the Principals."

**GE Agrees to Invest; Defendants**
**Repudiate Their Agreement With Mr. Staisil.**

32.  In the fall of 2007, the four Spartan principals negotiated with GE Asset Management regarding its potential investment of moneys in the Spartan venture.  Although Mr. Dammerman had close contacts at that company, they decided to make the approach through Merrill Lynch, which had agreed to raise money for the fund.  After several meetings between the principals and GE representatives, Mr. Dammerman met with GE personnel alone on or about December 6, 2007.  The principals

12

expected a deal to be struck that day. They were not disappointed. Mr. Dammerman called them in New York, where they had assembled, and told them that he had reached an agreement with GE Capital Management for its commitment of $50,000,000 in capital and its investment of up to ten percent of Spartan's capital raises. It also agreed to pay the management fee of 1.25 percent per annum that the fund charged its clients. In return, it would receive seven percent of the fund's general partner.

33. GE's commitment was a gigantic boost for the Spartan private equity fund venture because it would be much easier to raise money after the investment by such a preeminent "anchor" investor. They were now virtually assured of raising large sums of money for their fund. Mr. Staisil suggested that they all go out to dinner and celebrate. The principals had often dined together. However, on that occasion the others demurred.

34. Following GE's commitment, Messrs. Manley, Norris, and Dammerman wasted little time in repudiating their agreement with Mr. Staisil. The very next day, December 7, 2007, Mr. Norris sent an electronic mail message to Mr. Staisil in which he stated that "Dennis, Marshall and I have met regarding the current status of the Fund. We have decided that we need to re-align the Fund to reflect current realities." Mr. Norris went on to assert falsely that Mr. Staisil had agreed from the outset to provide the venture's working capital. Because, as he alleged, Mr. Staisil had failed to live up to his commitments and had not

13

even "spent any material time on Fund activities," they proposed to oust him from ownership of the fund's general partner and management company and instead to give him far lesser consideration that did not include any management role in the venture.

35.  Incredibly, Mr. Norris, attempting to render the parties' agreement illusory through creative interpretation, went so far as to assert in his December 7 message that:

> we have carefully examined the document that we all signed [presumably referring to the LLC Agreement] and it does not assure any of us a participation in either the GP or the management company of the Fund - of particular compensation from the Fund or related entities - should it actually be established.  To the extent that it could be read otherwise, it clearly empowers any three of us to act.

36.  In subsequent discussions, Messrs. Manley, Dammerman, and Norris continued their insistence that Mr. Staisil relinquish some or all of his ownership rights and accept a small portion of the consideration to which he is entitled.  On information and belief they have also circulated placement memoranda to potential investors in which the plaintiffs' roles in the fund venture are omitted.  In their repudiation of their obligations those defendants are joined by defendant GE Asset Management.  That entity's agents knew and know of the LLC Agreement and Mr. Staisil's interest in the fund venture, as they have spoken to Mr. Staisil, know the substance of the LLC Agreement, and on information and belief received a copy of that agreement.  Nonetheless that firm, which now on information and

14

belief owns a voting interest in the fund's general partner, approved of and participated in the breach. Indeed, due to the influence that that entity has within the venture, Mr. Staisil could not be frozen out without its approval.

37. More recently, the defendants on information and belief have transferred the private equity business to other entities that they control. They are presently marketing their fund in the name of Inflexion Capital Partners, LP and have on information and belief formed or plan to form other entities to operate the business in place of the Spartan entities. Those entities are currently named herein as defendants ABC LLC, DEF LLC, UVW LP, and XYZ LP.

### FIRST CLAIM FOR RELIEF
#### (For Breach of Contract)

38. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 37 of this complaint.

39. As set forth herein, defendants Stephen Norris Capital, The M82 Group, and DDD Ventures have repudiated and breached their agreement to divide equally the ownership and management of Spartan Holding and its fund business, which they created with Michael Staisil and Crimson Capital, by excluding Crimson Capital from its promised equal share in that business and excluding Michael Staisil from its management.

40. In consequence of those breaches of contract, plaintiffs have been damaged in an amount to be determined at trial but which is on information and belief in excess of

15

$20,000,000, for which those defendants and their successors in interest are jointly and severally liable. However, because monetary damages are not adequate to compensate the plaintiffs, a constructive trust should be imposed on plaintiffs' share of the business, assets, and moneys that those defendants have misappropriated; the defendants should be ordered to restore the plaintiffs' rights to name a Spartan Holdings' director and otherwise to participate in the management of the venture; and the defendants should be ordered to account for all moneys distributed from Spartan Holding and the other entities comprising the Spartan fund venture.

## SECOND CLAIM FOR RELIEF
### (For Breach of Fiduciary Duties)

41. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 40 of this complaint.

42. As managing members of Spartan Holdings and principals of the managing members, defendants Stephen Norris Capital, The M82 Group, DDD Ventures, Stephen Norris, Marshall Manley, and Dennis Dammerman owe fiduciary duties to the plaintiffs and, in the case of Messrs. Norris, Manley, and Dammerman, are duty-bound not to cause their limited liability companies to breach their fiduciary duties or knowingly to participate in those breaches. GE Asset Management, as a principal of one or more of the related fund entities -- on information and belief Spartan Investment Associates -- also owes fiduciary duties to plaintiffs. Those defendants breached those

16

duties by excluding, causing their companies to exclude, and participation in the exclusion of, the plaintiffs from their rightful interests in Spartan Holding and the fund venture it owns and was to own and the profits thereof, repudiating their duties to the plaintiffs, misappropriating Crimson Capital's interests in those entities and its share of profits for themselves, and depriving the plaintiffs from the benefits in the venture.

43.   In consequence of those breaches of fiduciary duties and their participation therein, defendants Stephen Norris Capital, The M82 Group, DDD Ventures, Stephen Norris, Marshall Manley, Dennis Dammerman, and GE Asset Management and their successors are jointly and severally liable to plaintiffs in an amount to be determined at trial but which is in excess of $20,000,000.  However, because monetary damages are not adequate to compensate the plaintiffs, a constructive trust should be imposed on plaintiffs' share of the businesses, assets, and moneys that those defendants have misappropriated; the defendants should be ordered to restore the plaintiffs' rights to appoint and act as a Spartan Holdings' director and otherwise to participate in the management of the venture; and the defendants should be ordered to account for all moneys distributed from Spartan Holding and the other entities comprising the Spartan fund venture, including the Spartan entities' successors in interest and transferees.

## THIRD CLAIM FOR RELIEF
### (For Oppression)

44.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 43 of this complaint.

45.    By their foregoing actions, which constitute burdensome and wrongful conduct, defendants Stephen Norris Capital, The M82 Group, DDD Ventures, Stephen Norris, Marshall Manley, Dennis Dammerman, and GE Asset Management have deprived plaintiffs of the benefits they reasonably expected from their participation in Spartan Holdings and the fund business it established and will establish.

46.    In consequence of that oppression, the defendants are liable to the plaintiffs in amounts to be determined at trial but which are in excess of $20,000,000; a constructive trust should be imposed on plaintiffs' shares of the businesses and moneys that the defendants have misappropriated; the defendants should be ordered to restore the plaintiffs' rights to name a Spartan Holdings' director and otherwise to participate in the management of the venture; and those defendants should be ordered to account for all moneys distributed to them, for their benefit, or at their direction, from the Spartan entities and any successors to their business.

## FOURTH CLAIM FOR RELIEF
### (In the Alternative, For Unjust Enrichment)

47.    Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 46 of this

18

complaint.

48.   The defendants have been unjustly enriched by the misappropriation of the plaintiffs' share of Spartan Holdings and the investment fund venture it owns or was to own, which was the fruit of the plaintiffs' skill, expenditures, and efforts.  It would be unjust to allow the defendants to retain that share of the venture and also not to compensate the plaintiffs for the true value of their contributions to the venture, as the defendants have done to date.  It would also be unjust for the defendants to divert the business of Spartan Holdings and related entities to other entities that they own or form, which on information and belief they are in the process of doing.

49.   In consequence of that unjust enrichment, those defendants are liable to the plaintiffs in an amount to be determined at trial but which is in excess of $20,000,000; a constructive trust should be imposed on plaintiffs' rightful interest in the fund venture and the profits therefrom; and the defendants should be ordered to account for all moneys distributed to them from the Spartan entities, by whatever name presently known, and/or the business established by the parties.

## FIFTH CLAIM FOR RELIEF
### (For Breach of Contract)

50.   Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 49 of this complaint.

51.   Defendants Norris, Manley, and Dammerman agreed that the investment business that they and Mr. Staisil were

19

creating would reimburse each of them for the moneys he reasonably spent for the business. That agreement was roughly reflected in §§ 4.12 and 3.6 of the LLC Agreement. Mr. Staisil reasonably expended substantial moneys for the venture, including payment of $410,000 and a commitment of $120,000 more (which payment is long overdue) for the Tiger Woods golf events, advancement of $50,000 to Stephen Norris to cover travel and entertainment costs, payment for development of a pitch book, a logo, and business cards, additional rent for office space in New York City for use by the other Spartan principals, payment of approximately $70,000 to a man named Alex Middleton to produce marketing materials for Spartan in conjunction with Aurelius Advisors, payment of a $50,000 retainer to Proskauer Rose, and travel, lodging, and entertainment expenses. Spartan Holding and the other defendants failed and refused to reimburse Mr. Staisil for those expenses notwithstanding the receipt from GE Asset Management of hundreds of thousands of dollars in management fees to date.

52.    In consequence of that breach of contract, the defendants are liable to Mr. Staisil in an amount to be determined at trial but which is in excess of $1,000,000.

### SIXTH CLAIM FOR RELIEF
(In the Alternative, for Promissory Estoppel)

53.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 52 of this complaint.

54.    Plaintiff Michael Staisil reasonably and

20

foreseeably relied on the promises of defendants Stephen Norris Capital, The M82 Group, DDD Ventures, Stephen Norris, Marshall Manley, Dennis Dammerman, and through them Spartan Holding, to his detriment by spending substantial time, effort, and money to exploit the Spartan private equity fund opportunity as set forth above. Mr. Staisil reasonably expected reimbursement of his expenses. However, the defendants have failed to reimburse him.

55. Mr. Staisil suffered damages in an amount in excess of $1,000,000 as a result of the defendants' breach. In consequence thereof, the defendants are liable to Mr. Staisil in an amount in excess of $1,000,000.

### SEVENTH CLAIM FOR RELIEF
#### (For Fraudulent Conveyances)

56. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 55 of this complaint.

57. On information and belief the defendants transferred the substantial assets, contracts, and business of the Spartan entities to Inflexion Capital Partners and other entities that they control, including the entities identified herein as defendants ABC LLC, DEF LLC, UVW LP, and XYZ LP. Those transfers were extraordinary and not effected in the ordinary course of those entities' business. They have the effect, and on information and belief the purpose, of putting the assets of the Spartan entities out of plaintiffs' reach.

58. By reason of the foregoing, those fraudulent conveyances should be avoided and plaintiffs should be awarded

21

the attorneys' fees they incur in avoiding them.

WHEREFORE, plaintiffs demand judgment:

A. awarding them compensatory damages against the defendants in amounts to be determined at trial but which total in excess of $20,000,000;

B. imposing a constructive trust in favor of plaintiffs on plaintiffs' shares of Spartan Holding, the affiliated Spartan companies, any successors to their fund business (including Inflexion Capital Partners), and moneys that those defendants have misappropriated and failed to provide to plaintiffs;

C. ordering all of the defendants to account for all moneys distributed to from Spartan Holding, the affiliated Spartan companies, Inflexion Capital Partners, and/or any successors to their fund business;

D. ordering the defendants to restore the plaintiffs' rights to name a director of Spartan Holding and any other successors to that firm, and otherwise to participate in the management of the venture;

E. avoiding the fraudulent transfer of the defendants' assets, contracts, and businesses; and

F.  for such other and further relief as the Court deems

just and proper.

Dated:  New York, New York
        June 23, 2008

                                    ALTMAN & COMPANY PC

                              By:  Eric Rosenberg

                                    260 Madison Avenue
                                    22nd Floor
                                    New York, New York 10016
                                    (212) 683-7600

                                    Attorneys for the Plaintiffs

23